**FIRST NATIONAL BANK & TRUST CO. OF RIVIERA BEACH v. BERRY, et ux.**

No. 76-2000-SP.

County Court, Palm Beach County.

April 20, 1976.

John R. Williams of Blank, Williams & Benn, West Palm Beach, for the plaintiff.

Richard W. Groner, West Palm Beach, for Midland Guardian Co., Inc., defendant in replevin.

Frank McKeown, Jr., West Palm Beach, for the sheriff, defendant in replevin.

DANIEL T. K. HURLEY, Judge.

This cause came on before the court upon plaintiff's application for a writ of replevin and the court having heard argument of counsel, and having received legal memoranda from the parties, now sets forth its findings of fact and conclusions of law —

## FACTS

1. Plaintiff, First National Bank and Trust Company of Riviera Beach, is the holder of a collateral promissory note made by the defendants, Berry, with an existing balance of approximately $1,200. The note grants the bank the rights of a secured party under the Uniform Comercial Code in and to a 1974 Chevrolet pick-up truck, which is the subject matter of this action.

2. The defendant in replevin, Midland Guardian Company, Inc., is the holder of a judgment dated January 7, 1976. Writ of execution was issued on said judgment on February 5, 1976, and levy was made by the sheriff of Palm Beach County, also a defendant in replevin, on February 13, 1976. The sheriff advertised the vehicle for public sheriff's sale subject to all prior liens on March 30, 1976.

3. On March 5, 1976, plaintiff filed a two-count complaint in the county court for Palm Beach County. Count one prayed for a money judgment against James H. and Patricia Berry, with interest, court costs and attorney's fees. Count two sounded in replevin, and claimed that the property was being wrongfully detained by the sheriff of Palm Beach county. In addition to the writ of replevin, count two further requested a temporary restraining order to prohibit the sheriff from selling the property.

4. On March 9, 1976, at plaintiff's request, the court issued a temporary restraining order enjoining "William R. Heidtman, Sheriff of Palm Beach County, and Midland Guardian Company, Inc., . . . from selling or disposing of the said property, or engaging in any conduct that will place the claimed property in danger of destruction, concealment, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser, pending the hearing on said order to show cause . . ." On the same day the court entered an order to show cause and set a hearing date for March 22, 1976.

5. At the March 22, 1976 hearing on the order to show cause, the defendant-owners, Berry, interposed no defense. The sheriff requested a clarifying ruling by the court and the defendant in replevin, Midland, opposed the issuance of a writ of replevin. The court thereupon requested submission of legal memoranda.

6. The sheriff's public sale was not conducted on March 30, 1976.

7. On April 1, 1976, plaintiff obtained a money judgment against the defendants, Berry, in the amount of $1,388.15, which represents the entire amount owing under the contract.

### CONCLUSIONS OF LAW

The question presented by this case is whether a secured creditor, upon default, may seek a writ of replevin to obtain possession of the secured property which has been levied upon by the sheriff and is about to be sold at public sale subject to all prior liens. The court concludes that the answer to this question is "No."

### I

The respective positions of the parties may be simply stated. Plaintiff claims a right to immediate possession under §679.9-503 of the Uniform Commercial Code —

"Unless otherwise agreed a secured party has on default the right to take possession the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides

the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under §679.9-504."

The sheriff, a defendant in replevin, contends that Florida Statute 78.055 (the Replevin Statute) does not apply to the sheriff who has been ordered by the court to take custody of the property and therefore, cannot be wrongfully detaining or be wrongfully in possession of the property. He argues that the property levied on by the sheriff under the proper writ is considered to be in the custody of the court and it must logically follow that the sheriff cannot be considered a proper party to an action under §78.055.

Midland's position is somewhat similar to the sheriff's. Relying upon *Nason v. Polo Water Company,* 166 So.2d 691 (2d Fla. App. 1964), Midland argues that the sheriff's sale should go forward and the fact that the property is sold "subject to all prior liens" assures adequate protection to the secured creditor.

## II

There are a number of pre-code cases which address the question of whether a party may replevy property seized under a valid writ of execution. In *Kelso v. Younggren,* 90 N. W. 316, 317 (Minn. Sup. Ct. 1902), the Court said —

". . . [T]he plaintiff must file an affidavit to the effect that such property has not been seized under any execution or attachment against it. It follows, therefore, that, if property has been so seized, that fact would be a complete defense. This is in accordance with the general rule upon the subject, — that property in custody of the law cannot be replevied from the officer in whose charge it is, by the defendant, or anyone claiming title under him, after the levy of the execution."

See also *Adams v. Burns,* 172 So. 75 (Fla. 1936). Today, however, a claim that property is "in custodia legis" is no longer the impenetrable defense that it once was. Recently in *Moresca v. Allstate Insurance Company,* 231 So.2d 283 (4th Fla. App. 1970), the court held —

A chattel in custodia legis is not necessarily immune from seizure under a writ of replevin. For example, property held under a writ of execution or attachment is in custodia legis, but a Florida statute specifically permits replevin of the same from the possession of the sheriff when the property is exempt from execution or attachment (Section

78.02(2), F.S. 1967) or is claimed by some person other than that defendant in attachment (Section 76.21, F.S. 1967). The Florida Replevin Statute (Section 78.01, F.S. 1967) provides that goods or chattels wrongfully detained by any person or officer may be replevied.

Other examples of property recovered from the custody of the court are — *Mechanics Nat. Bank v. Parker,* 242 A.2d 69 (N.H. Sup. Ct. 1968) and *Confidential Loan & M. Co. v. Hardgrove,* 48 N.W. 2d 466 (Wis. Sup. Ct. 1951).

The issue must be narrowed to whether a secured creditor may replevy property which is "in custodia legis" by virtue of a valid writ of execution. The Third District Court of Appeal in the post-code case of *Altec Lansing v. Friedman Sound, Inc.,* 204 So.2d 740 (3d Fla. App. 1967), answered this question in the negative. There an individual named Wise perfected a security agreement between himself and Friedman Sound, Inc. Thereafter Altec secured a judgment against Friedman and caused a writ of execution to be issued, attempting to levy upon the fixtures and inventory of Friedman. Wise then filed a third-party claim bond and moved to dissolve the writ of execution, claiming that he had prior right to the fixtures and assets. The trial court sustained Wise's position and in effect held that the property covered by the security agreement was exempt from execution.

The District Court of Appeal reversed, holding —

"A security agreement under §679.9-203, Fla. Stat., has the same effect as did a chattel mortgage prior to the adoption of the Uniform Commercial Code, i.e., it may create a prior lien in favor of the person named in the agreement as creditor on the chattels involved but does not exempt them from a forced judicial sale. Said chattel may still be sold by an execution creditor subject to the lien provided in the security agreement."

A second case which reaches the same conclusion as *Altec* and which is factually similar to the case at bar is *First National Bank v. Sheriff of Milwaukee Co.,* 149 N.W. 2d 548 (Wis. Sup. Ct. 1967). Contra, *Maryland Nat. Bk. v. Porter-Way Harvester Mfg Co.,* 300 A. 2d 11 (Del. Sup. Ct. 1972).

One of the plaintiff's arguments is that a judicial sale would allow for the transfer of the property to an "innocent purchaser." As indicated in *Altec,* this argument is without merit and is insufficient to stop the sale. An execution sale passes only whatever title the judgment debtor had in the property. The fact that the property is being sold under the execution, in and of itself, certainly does not decrease the duty of a person who is purchasing to make reason-

able inquiry and investigation as to the actual ownership of the property being sold — in fact, if anything, it would appear that the circumstances of the sale would raise a "red flag" urging even greater caution since obviously "distressed property" is involved. *Powell v. Whirlpool Employees Federal Credit Union,* 201 N. W. 2d 683 (Mich. Ct. App. 1972) and 30 ALR. 3d 9, Section 30, Uniform Commercial Code — Article 9, Attaching Creditor.

### III

A second ground for denying plaintiff's application and one which is unrelated to the foregoing, stems from the plaintiff's action of April 1, 1976, at which time the plaintiff sued for and obtained a judgment for the complete amount of money owing under the contract. This action constitutes an election of remedies and precludes an action in replevin. An action for the entire purchase price of property sold under a conditional sales contract is an irrevocable election to treat the transaction as a sale which passes title to and vests it in the buyer. The vesting of absolute title is therefore inconsistent with a subsequent action for repossession which is considered a rescission of the contract. See *Encore, Inc. v. Olivetti Corp. of America,* 326 So.2d 161 (Fla. 1976) and the cases cited therein.

Accordingly, it is ordered and adjudged that plaintiff's application for a writ of replevin is denied. It is further ordered and adjudged that the sheriff of Palm Beach County shall proceed with the public sale of the vehicle in question. And it is further ordered and adjudged that the cost of re-advertising for said sale, together with all other costs attributable to the delay of the originally scheduled March 30, 1976, public sale, shall be taxed as costs against the First National Bank and Trust Compny of Riviera Beach, plaintiff in this action.